J-S29027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ALEXANDER LEE ALLEN | : | |
| | : | |
| Appellant | : | No. 2 MDA 2023 |

Appeal from the Judgment of Sentence Entered November 22, 2022
In the Court of Common Pleas of Cumberland County
Criminal Division at No(s): CP-21-CR-0001719-2021

BEFORE: MURRAY, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED: SEPTEMBER 11, 2023**

Appellant, Alexander Lee Allen, appeals from the judgment of sentence

entered in the Cumberland County Court of Common Pleas, following his jury

trial convictions for arson (endangering property) and criminal mischief.[1] We

affirm.

In its opinion, the trial court set forth the relevant facts of this case as

follows:

> On June 27, 2021, Kelly Warner, the wife of [Appellant's]
> pastor, arrived at her home at the church parsonage to find
> a wedding dress and pictures with notes left at her door.
> She recognized the items as belonging to [Appellant] and
> his wife, Andrea. Her husband had officiated at their
> wedding. She was friends with [Appellant's] wife and

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 3301(c)(2) and 3304(a)(5), respectively.

familiar with [Appellant] through his involvement in the church.

When Warner read one of the unsealed notes, she believed it was a possible suicide note. It said that [Appellant] was going to do himself in at the place they had started. She understood that to mean the church, since that is where they were married. She contacted Andrea to tell her what she had found. She then walked through the church, which is part of the same compound on which her house sits, to see if [Appellant] was around. She was afraid that he may have committed suicide inside the church. When she returned to her house, the church parking lot outside her home was empty. Shortly thereafter, she looked outside and noticed that a car was parked in the lot.

The car was parked near her car directly in front of her house. From her house, she could see [Appellant] in the car wiping the windshield. She feared that he was preparing the windshield to shoot himself. She went out to talk with him. As she walked up to the car, she noticed a propane tank on the passenger seat. There were also other tanks in the backseat of the vehicle. [Appellant] was in the driver's seat holding a bottle of clear alcohol and smoking a cigarette. He insisted upon talking with his estranged wife. He also told her that if she called the cops, he would light the car on fire.

Afraid that [Appellant] might set the car on fire so near her house, Warner immediately retrieved her dog from the home to leave. As she was leaving in her car, [Appellant's] estranged wife drove into the parking lot. Warner turned around to return to the lot. [Appellant's] wife pulled in to face catty-corner to his car. Warner parked beside the garage. While she attempted to call another friend for help, she saw [Appellant's] car catch on fire. She hung-up with the friend and immediately called 9-1-1.

[Appellant] was still inside the car when it caught fire. Warner could see that the dashboard was in flames. It had started out small but then grew bigger. [Appellant] got out of the car. Warner went to her neighbor's house to seek help. She looked back to see the car fully engulfed in flames and [Appellant] walking away. She last saw him running

- 2 -

from the parking lot down Old Stonehouse Road. She left the scene as soon as first-responders arrived.

Firefighters arrived on scene to put out the fire. The car was too engulfed in flames to combat, so they decided to let it burn itself out. A neighbor was able to hear hissing and an explosion.

Trooper Dojka of the Pennsylvania State Police was canvassing the area to search for [Appellant]. About 45 minutes after first-responders had been dispatched, he encountered [Appellant] at the intersection of Zimmerman and York Roads. He immediately turned on his lights and called for backup. He could see that [Appellant] had a bottle of lighter fluid in his hand. [Appellant] then began to pour the lighter fluid all over himself. He tried to strike a lighter numerous times, but it did not light. Trooper Dojka rushed out of his cruiser and knocked the lighter from [Appellant's] hand. Meanwhile, other troopers had arrived on scene to assist Trooper Dojka. [Appellant] asked them repeatedly to shoot him. The entire encounter was recorded on Trooper Dojka's dashcam, which was shown to the jury.

Trooper Wells was assigned as the lead investigator. He interviewed [Appellant] immediately after his arrest. [Appellant] was still in the same clothes he had been wearing during the incident. He reeked of lighter fluid. He continued to complain that his skin burned. [Appellant] even told the trooper that he had ingested some of the lighter fluid. He was allowed to use the emergency shower at the barracks. The interview resumed as soon as [Appellant] finished his shower. At that time, [Appellant] admitted to setting the car on fire to commit suicide, but he did not know why he got out. Trooper Wells also went to the scene to investigate. By the time he arrived, the [fire] had already burned out. There was a propane tank in the passenger seat. There was a bottle of lighter fluid outside of the car. It was similar to the bottle of lighter fluid taken from [Appellant]. When the car was towed away, it was evident that the fire had damaged the [parking] lot. The damage cost $3,800 to repair.

A fire marshal was called to the scene. His investigation confirmed witness accounts that the fire started in the front

- 3 -

passenger area. It then spread throughout the vehicle. As the fire spread, the heat caused the propane tank in the front passenger seat to explode, which was consistent with witness reports. The fire marshal opined that the fire was intentionally set.

(Trial Court Opinion, filed 4/18/23, at 2-6) (internal citations omitted).

On August 30, 2022, a jury convicted Appellant of arson (endangering property) and criminal mischief.[2] The court sentenced Appellant on November 22, 2022, to concurrent terms of 27 to 84 months' imprisonment for arson, and 6 to 24 months' imprisonment for criminal mischief. Appellant filed a timely post-sentence motion on December 2, 2022, which the court denied on December 7, 2022. On December 30, 2022, Appellant timely filed a notice of appeal. On January 3, 2023, the court ordered Appellant to file a concise statement of errors complained of on appeal per Pa.R.A.P. 1925(b), and Appellant timely complied.

Appellant raises two issues for our review:

Whether the evidence was sufficient to support the jury's verdict of guilty as to the charge of Arson Endangering Property?

Whether the evidence was sufficient to support the jury's verdict of guilty as to the charge of Criminal Mischief?

(Appellant's Brief at 5).

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

---

[2] The jury found Appellant not guilty of risking a catastrophe.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the Appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

In his first issue, Appellant argues that the Commonwealth failed to prove he intentionally started the fire. Appellant claims that no eyewitness saw how the fire started or saw or smelled lighter fluid. Appellant insists that eyewitnesses only saw Appellant drinking alcohol and smoking cigarettes. Appellant contends that Trooper Wells was unable to determine if the lighter recovered on Appellant's person was even functional. Appellant insists the

- 5 -

Commonwealth's expert was unable to testify to an ignition source. Appellant maintains that Trooper Terek conducted no investigation as to the contents of the propane tank and could not testify as to whether the tank was empty or full. Appellant stresses that Trooper Terek did not take any samples from inside the vehicle and was unable to answer whether lighter fluid had been poured in the vehicle.

Further, Appellant argues the Commonwealth failed to prove that he recklessly placed an inhabited building or occupied structure of another in danger of damage or destruction. Appellant avers that upon seeing flames, Ms. Warner drove out of the parking lot to a neighbor's house who happened to be the fire chief. Appellant claims that his wife and mother-in-law also left the parking lot and immediately followed Ms. Warner. Thus, Appellant submits that his car, alone, was left in the center of the parking lot. Appellant emphasizes that the Commonwealth produced no evidence that any other vehicles were damaged or in danger of destruction. Appellant stresses that the firefighters let the fire burn out, suggesting the fire was not severe enough to cause further damage. Appellant concludes the evidence was insufficient to sustain his conviction for arson, and this Court must grant relief. We disagree.

The Crimes Code defines the offense of arson, in relevant part, as follows:

**§ 3301. Arson and related offenses**

\* \* \*

**(c) Arson endangering property.**—A person commits a felony of the second degree if he intentionally starts a fire or causes an explosion, whether on his own property or that of another, or if he aids, counsels, pays or agrees to pay another to cause a fire explosion, and if:

\* \* \*

(2) he thereby recklessly places an inhabited building or occupied structure of another in danger of damage or destruction[.]

18 Pa.C.S.A. § 3301(c)(2).

"Occupied structure" is defined as "[a]ny structure, vehicle or place adapted for overnight accommodation of persons or for carrying on business therein, whether or not a person is actually present." 18 Pa.C.S.A. § 3301(j). "A person acts intentionally with respect to a material element of an offense when…it is his conscious object to engage in conduct of that nature or to cause such a result[.]" 18 Pa.C.S.A. § 302(b)(1)(i). "A person acts recklessly with respect to a material element of an offense when he consciously disregards a substantial and unjustifiable risk that the material element exists or will result from his conduct." 18 Pa.C.S.A. § 302(b)(3).

Instantly, the trial court evaluated this claim as follows:

The fact that there was a fire is uncontested. The fire marshal testified that the fire was started intentionally. Witnesses also testified that [Appellant] was the only person in the car at the time of the fire. Moreover, [Appellant] admitted to starting the fire in order to commit suicide. Clearly, the evidence was sufficient to sustain the jury's finding that [Appellant] intentionally started a fire. There was also testimony that [Appellant] used accelerants to fuel

- 7 -

the fire and rigged the car's passenger seat with a propane tank. He parked the car, essentially a ticking-timebomb, in a parking lot shared by a church and several residences, including the pastor's home, before setting it ablaze. Once it was on fire, the heat and pressure caused the propane tank on the passenger seat to explode. One resident of a home adjoining the parking lot heard that explosion while she watched the fire from her patio.

Viewing the above evidence in the light more favorable to the Commonwealth as the verdict winner, we are satisfied that the evidence was sufficient to sustain the verdict for Arson Endangering Property. The evidence supports the jury's finding that [Appellant] intentionally set a fire and, in doing so, he created a substantial and unjustifiable risk of damage or destruction to inhabited buildings and occupied structures.

(Trial Court Opinion at 7-8). The record supports the court's analysis. Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to sustain Appellant's conviction for arson. **See** 18 Pa.C.S.A. § 3301(c)(2); **Sebolka, supra**.

In his second issue, Appellant argues that the Commonwealth failed to prove he intended to damage the church parking lot. Appellant asserts that the Commonwealth presented no evidence that it was Appellant's conscious object and purpose to damage the church parking lot and it was unreasonable for the jury to conclude otherwise. Appellant emphasizes that the trial court agreed in its opinion that there was insufficient evidence to sustain his criminal mischief conviction.[3] Appellant concludes the evidence was insufficient to

---

[3] The Commonwealth disagrees with the trial court's analysis of this issue.

sustain his criminal mischief conviction, and this Court must grant relief. We disagree.

The Crimes Code defines criminal mischief, in relevant part, as follows:

**§ 3304. Criminal mischief**

**(a) Offense defined.**—A person is guilty of criminal mischief if he:

* * *

(5) intentionally damages real or personal property of another[.]

18 Pa.C.S.A. § 3304(a)(5).

Instantly, the trial court decided the evidence was insufficient to sustain Appellant's criminal mischief conviction. The court opined:

> Viewing the evidence in the light most favorable to the Commonwealth as the verdict winner, it was insufficient to find that [Appellant] **intended** to damage the church parking lot. He intended to commit suicide by setting his car on fire. There was no evidence whatsoever that it was his conscious object and purpose to damage the parking lot. Nor was it reasonable to conclude from the evidence that it was his conscious object or purpose to cause such damage. While he did intend to start a fire to commit suicide, there was no evidence to suggest that he gave any thought whatsoever to the ancillary consequences of his actions, which included damage to the parking lot.

(Trial Court Opinion at 9) (emphasis in original).

The Commonwealth disagrees with the trial court's analysis, claiming that the evidence was sufficient to sustain Appellant's criminal mischief conviction based on Appellant's intent to damage the **car** Appellant set on fire (which belonged to Appellant's mother-in-law, Nancy Johnson), not the

parking lot. (*See* Commonwealth's Brief at 28-30). We agree with the Commonwealth's position.

Here, the criminal complaint specified that the criminal mischief count was tied to the vehicle Appellant was driving, not the parking lot. (*See* Criminal Complaint, dated 5/28/21, at 2) (alleging "[Appellant] did intentionally damage real or personal property of another. To Wit; [Appellant] set the victim's vehicle on fire"). At trial, however, the Commonwealth pursued the criminal mischief count relative to either the car Appellant was driving, or the church parking lot. In its jury instruction on criminal mischief, the court stated: "In this case, the allegation is that [Appellant] damaged the car of his mother-in-law, Ms. Johnson, and the parking lot of the church. … So, he had to intentionally damage the personal property of Ms. Johnson and/or the church…." (*See* N.T. Trial, 8/30/22, at 263).

During deliberations, the jurors submitted a question stating: "We believe that [Appellant] damaged the property of another. We believe he intended to cause damage to the car but not that he intended to damage the parking lot. Should we include the value of the damage to the parking lot in determining the loss?" (*See id.* at 268). The court responded to the question as follows: "The simple answer to that is no." (*Id.* at 269). The court then elaborated on its response, and the jurors indicated they understood the court's explanation. (*Id.*) When the jury entered its verdict, the jury found Appellant intentionally caused damage on the criminal mischief count of over

$1,000.00 but not over $5,000.00. (**See** Verdict for Criminal Mischief, 8/30/22, at 1). This finding is consistent with evidence at trial showing that Ms. Johnson sustained $3,662.40 in damage to the vehicle, which was deemed a "total loss." (**Id.** at 168-69).[4]

Viewed in the light most favorable to the Commonwealth as verdict winner, the evidence was sufficient to show that it was Appellant's conscious object to cause damage to Ms. Johnson's vehicle when he set her car on fire. **See** 18 Pa.C.S.A. § 3304(a)(5). **See also Sebolka, supra**. Therefore, the evidence was sufficient to sustain Appellant's criminal mischief conviction. **See id.** Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/11/2023

---

[4] Although the jury's verdict as to the amount of the loss would have also been consistent with the amount of damage to the parking lot, which Ms. Warner testified was $3,800.00 (**see id.** at 68), based on the jury question during deliberations, it is clear the jury's verdict was tied to damage to Ms. Johnson's vehicle.