J-S36029-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ROBERT VERLANE STEAVENS | : | |
| | : | |
| Appellant | : | No. 436 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 5, 2022
In the Court of Common Pleas of Westmoreland County
Criminal Division at No(s): CP-65-MD-0000147-2022

BEFORE: STABILE, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY KING, J.: **FILED: DECEMBER 2, 2022**

Appellant, Robert Verlane Steavens, appeals from the judgment of sentence entered in the Westmoreland County Court of Common Pleas, following his bench trial conviction for indirect criminal contempt ("ICC") based on Appellant's violation of a protection from abuse ("PFA") order.[1] We affirm.

The trial court accurately set forth the relevant facts and procedural history of this case as follows:

> On November 16, 2020, a [PFA] Order was issued by this [c]ourt against Appellant. Pursuant to the Order, Appellant was prohibited from having any contact with his ex-wife, [Victim].

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 23 Pa.C.S.A. § 6114(a).

An [ICC] Complaint was filed against Appellant on February 11, 2022, alleging that Appellant had a third party contact [Victim] in July of 2021. The Complaint alleged that Appellant previously violated the [PFA] eight times. A hearing on the [ICC] of the [PFA] Order was scheduled for February 22, 2022. The hearing was continued until April 5, 2022, at the request of the Commonwealth.

A hearing regarding the [ICC] was held on April 5, 2022.

At the hearing, Thomas Harr testified that he was approached by Appellant in Westmoreland County Prison before being sent to SCI Fayette. Appellant asked Mr. Harr if he wanted a pen pal. Mr. Harr called [Victim] and wrote a letter to her the following week when he was transferred to SCI Fayette, as he was told that [Victim] enjoyed having pen pals. The individual who approached Mr. Harr had blue hair and a Mohawk at the time, although Mr. Harr did not get a good look at the individual since [the person was] speaking to him from outside of his cell. Mr. Harr initially could not recall who approached him but later testified that the individual was Appellant. Mr. Harr found [Victim's] name and phone number written on the bunk of his bed before he was approached about contacting her.

[Victim] testified that she received a phone call from prison in July 2021 and received the letter two weeks later from a man named Tom. [Victim] did not know anybody in prison at that time except for Appellant. Appellant has [Victim's] phone number and address. She has seen Appellant previously with blue hair styled in a Mohawk. [Victim] testified that she received a card from Appellant the day before the hearing.

Detective Nicholas Caesar, a detective for Westmoreland County, investigated the letter and phone call after [Victim] reported a PFA violation. Detective Caesar determined that the letter was sent from SCI Fayette and the phone call came from the Westmoreland County Prison. His investigation determined that Mr. Harr and Appellant were incarcerated at the same time and would have had contact with each other.

Appellant testified that he was incarcerated in July of 2021

in the Westmoreland County Prison. At the time of the hearing, Appellant had multiple PFA violations and he received discovery from the District Attorney regarding another case which included [Victim's] personal information. Appellant admitted he violated the PFA at least nineteen times previously but was adamant that he did not direct Mr. Harr to contact [Victim]. Appellant acknowledged that he previously had blue hair that he wore in a Mohawk style. Appellant believes that Detective Caesar gave Mr. Harr the information relating to [Victim] because he was already investigating Appellant for another matter.

This [c]ourt found Appellant guilty and he was sentenced to three to six months' incarceration at the Westmoreland County Prison. …

(Trial Court Opinion, filed 8/10/22, at unnumbered pp. 1-3) (internal citations omitted). Appellant timely filed a notice of appeal on April 20, 2022. The court did not order, and Appellant did not file, a Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal.

Appellant raises one issue for our review:

Did the [c]ourt err in finding that sufficient evidence was presented to find Appellant guilty of [ICC] when the Commonwealth's main witness repeatedly offered contradictory testimony that was insufficient to establish guilt beyond a reasonable doubt?

(Appellant's Brief at 4).

Appellant argues that Mr. Harr's testimony was so contradictory that it should not have been relied upon in determining that the Commonwealth satisfied its burden of proof. Appellant asserts that Mr. Harr failed to initially identify Appellant and only changed his testimony after reading a statement that lacked identifying details. Appellant claims Mr. Harr initially denied

having seen the individual who provided Victim's contact information and only identified Appellant to Detective Caesar after the detective showed Mr. Harr a picture of Appellant. Appellant states: "Put simply, Mr. Harr's testimony was so problematic as to warrant it being rejected altogether." (*Id.* at 10). Appellant suggests that someone other than Appellant could have accessed Appellant's discovery containing Victim's information and supplied Victim's contact information to Mr. Harr. Appellant concludes the Commonwealth presented insufficient evidence to convict him of ICC, and this Court must reverse his conviction and vacate his judgment of sentence. We disagree.

As a preliminary matter, we observe that the distinction between a claim challenging the sufficiency of the evidence and a claim challenging the weight of the evidence is critical. *Commonwealth v. Widmer*, 560 Pa. 308, 318, 744 A.2d 745, 751 (2000).

> A claim challenging the sufficiency of the evidence, if granted, would preclude retrial under the double jeopardy provisions of the Fifth Amendment to the United States Constitution, and Article I, Section 10 of the Pennsylvania Constitution, whereas a claim challenging the weight of the evidence if granted would permit a second trial.
>
> A claim challenging the sufficiency of the evidence is a question of law. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Where the evidence offered to support the verdict is in contradiction to the physical facts, in contravention to human experience and the laws of nature, then the evidence is insufficient as a matter of law. When reviewing a sufficiency claim the court is required to view the evidence in the light most favorable to the verdict winner giving the prosecution the

benefit of all reasonable inferences to be drawn from the evidence.

A motion for new trial on the grounds that the verdict is contrary to the weight of the evidence, concedes that there is sufficient evidence to sustain the verdict. Thus, the trial court is under no obligation to view the evidence in the light most favorable to the verdict winner. An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. A trial judge must do more than reassess the credibility of the witnesses and allege that he would not have assented to the verdict if he were a juror. Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

*Id.* at 319-20, 744 A.2d at 751-52 (internal citations and quotation marks omitted). *See also Commonwealth v. Wilson*, 825 A.2d 710 (Pa.Super. 2003) (explaining sufficiency of evidence review does not include assessment of credibility, which is more properly characterized as challenge to weight of evidence).

Instantly, Appellant's issue as presented on appeal is more properly characterized as a weight challenge, where Appellant is essentially arguing that the court should have rejected Mr. Harr's testimony as incredible and found Appellant's testimony more credible than those of the Commonwealth's witnesses. *See id.* Appellant, however, failed to raise any objection to the weight of the evidence in the trial court. Therefore, Appellant's claim is

waived. *See* Pa.R.Crim.P. 607(A) (stating that defendant must raise weight claim with trial judge in first instance). *See also Commonwealth v. Cox*, 231 A.3d 1011, 1018 (Pa.Super. 2020) (stating weight challenge must be preserved either in post-sentence motion, written motion before sentencing, or orally prior to sentencing; appellant's failure to avail himself of any of prescribed methods for presenting weight issue to trial court constitutes waiver of that claim).

Even if we could construe Appellant's claim as a proper challenge to the sufficiency of the evidence, it would not merit any relief. In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced,

accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

***Commonwealth v. Sebolka***, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting ***Commonwealth v. Franklin***, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The PFA Act permits a court to hold an individual subject to a protection order in contempt of such order and to punish the defendant in accordance with the law. ***See*** 23 Pa.C.S.A. § 6114(a). To establish ICC, the Commonwealth must prove: (1) the order was sufficiently definite, clear, and specific to the contemnor as to leave no doubt of the conduct prohibited; (2) the contemnor had notice of the order; (3) the act constituting the violation must have been volitional; and (4) the contemnor acted with wrongful intent. ***Commonwealth v. Walsh***, 36 A.3d 613, 619 (Pa.Super. 2012).

Here, Appellant admitted that he was aware of the PFA order prohibiting him from contacting Victim. In finding that Appellant violated the PFA order, the trial court explained:

> Appellant argued that he had no contact with Mr. Harr and that Mr. Harr was directed to contact [Victim] by a disgruntled inmate who was trying to get Appellant in trouble. The [c]ourt was not persuaded by this argument, as there was sufficient evidence presented to conclude that Appellant directed Mr. Harr to contact [Victim]. Appellant had [Victim's] personal information and was the only inmate [Victim] knew at the time she received the phone call from the Westmoreland County Prison. Mr. Harr was able to identify Appellant by his recognizable hair color and style. Detective Caesar concluded in his investigation that

Appellant and Mr. Harr were incarcerated in the Westmoreland County Prison at the same time and would have interacted. Additionally, Appellant admitted to violating the PFA nineteen times previously and was still sending [Victim] mail even after he was charged with [ICC].

\* \* \*

There was sufficient evidence presented to establish that Appellant directed a third-party, Mr. Harr, to contact [Victim] in violation of the PFA Order. This contact had no purpose other than to harass [Victim]. …

(Trial Court Opinion at unnumbered pp. 3-4) (internal citations omitted).

Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to sustain Appellant's ICC conviction. **See Sebolka, supra**. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/02/2022