J-S17033-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT OP 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellee | : | |
| | : | |
| v. | : | |
| | : | |
| ANDREW ALLEN PERRY | : | |
| | : | |
| Appellant | : | No. 930 WDA 2022 |

Appeal from the Judgment of Sentence Entered April 13, 2022
In the Court of Common Pleas of Beaver County
Criminal Division at No(s):  CP-04-CR-0001177-2020

BEFORE:  LAZARUS, J., OLSON, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED:  July 12, 2023**

Appellant, Andrew Allen Perry, appeals from the judgment of sentence entered in the Beaver County Court of Common Pleas, following his jury trial convictions for burglary, aggravated assault, simple assault, recklessly endangering another person ("REAP"), and possession of drug paraphernalia, and his bench trial conviction for the summary offense of harassment.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  In the early morning hours on July 28, 2020, Victim was badly beaten in her home in Daugherty Township, Pennsylvania.  In connection with this incident, the Commonwealth charged Appellant with burglary, aggravated assault,

---

[1] 18 Pa.C.S.A. §§ 3502(a)(1); 2702(a)(1); 2701(a)(1); 2705; 35 P.S. § 780-113(a)(32); and 18 Pa.C.S.A. § 2709(a)(1), respectively.

simple assault, REAP, possession of drug paraphernalia, loitering and prowling at night, and the summary offenses of harassment and restrictions on alcoholic beverages. Appellant proceeded to a jury trial on March 9, 2022. Appellant's theory of the case throughout trial was that Appellant was not the person who assaulted Victim. Defense counsel argued that Appellant and Victim were in a prior romantic relationship and Appellant was with Victim approximately two days before the assault. On that date, Appellant claimed he was helping Victim up the stairs with her groceries when Victim fell, scraping her elbows and getting her blood on Appellant's jeans.

At trial, the Commonwealth presented the following testimony/evidence.[2] Officer Keith Smith of the New Brighton Area Police Department testified that he was on duty in the early morning hours of July 28, 2020. (*See* N.T. Trial, 3/10/22, at 48). At approximately 5:00 a.m. on that date, Victim arrived at the police station. (*Id.* at 49). Victim looked as if she had been attacked. (*Id.*) Victim had obvious injuries to her face and appeared to be in shock. (*Id.* at 49-50). Victim also had open wounds on her forearms. (*Id.* at 54). Officer Smith photographed Victim's various injuries. (*Id.*) After Officer Smith photographed Victim's injuries, he called for an ambulance. (*Id.* at 50-51).

Based on Officer Smith's conversation with Victim, he decided to arrest

---

[2] Victim died prior to trial so she was unavailable to testify. Victim's death was not a result of the injuries at issue in this case.

Appellant. (*Id.* at 57). Sometime between 5:30-6:00 a.m., Officer Smith and Officer Jeremy Conley went to arrest Appellant at a location where the officers thought Appellant would be, which was the home of Bryan Keith Richards. (*Id.* at 58, 62). Mr. Richards' residence was approximately ten minutes away from the Victim's residence. (*Id.* at 131). Within a few blocks of Mr. Richards' home, Officer Smith observed Appellant's car. (*Id.* at 59). The hood of Appellant's car was warm to the touch. (*Id.* at 59-60).

The officers knocked on the door and announced their presence, and Mr. Richards informed the officers that Appellant was upstairs asleep. (*Id.* at 60-61). Officers found Appellant asleep naked on the bed. (*Id.* at 63). On the floor next to Appellant was a pile of clothes covered in bright red blood. (*Id.* at 67-68). Officer Smith testified that bright red coloring was an indication the blood was fresh. (*Id.* at 68). There was also blood on Appellant's shirt and shoes. (*Id.* at 144, 152). Officer Smith also observed a pile of cleaning wipes on a chair next to the bed that were clumped up together. (*Id.* at 147). The officers also found Appellant's wallet, a large amount of cash, a social security card, and a pipe for smoking methamphetamine in the pockets of Appellant's bloodied jeans. (*Id.* at 85-86). The front door to Victim's residence also suggested there had been some type of forced entry inside the residence. (*Id.* at 150).

The Commonwealth next called Officer Conley to the stand. (*Id.* at 157). Officer Conley testified to the details of Appellant's arrest and the

officers' observations, consistent with Officer Smith's testimony. (*Id.* at 159-173).

The Commonwealth then played a series of recorded phone calls which Appellant made while he was in Beaver County jail following his arrest.[3] The Commonwealth recalled Officer Smith to discuss the content of some of the calls. (*Id.* at 178-190).

Dr. Shayla Cammarata testified next. (*See* N.T. Trial, 3/11/22, at 6). Dr. Cammarata testified that she evaluated Victim around 6:00 a.m. on July 28, 2020. (*Id.* at 9). Victim had "so much facial trauma" and swelling. (*Id.* at 10). Victim presented to the emergency department saying that she had been assaulted. (*Id.* at 14). Specifically, Victim said she was hit repeatedly with a closed fist, and her assailant had also attempted to strangle her with an extension cord. (*Id.*) Dr. Cammarata observed abrasions on Victim's

_____

[3] The Commonwealth also played jailhouse recordings later in the trial. The recordings are included in the certified record on appeal. Nevertheless, this Court had technical difficulties playing the recordings, so we were unable to review them.

The record and briefs on appeal suggest that in the recordings, Appellant admitted that he was near the scene of the crime when Victim was assaulted and that he knew Victim had money hidden in her home. In another recording, Appellant's brother told Appellant that the Commonwealth had significant evidence against Appellant and that Appellant needed an alibi. In a subsequent recorded call, Appellant told his brother he had found an alibi, and maintained that he had found a witness who observed Victim's alleged fall down the stairs when Appellant was helping her with groceries.

Appellant does not dispute that any of this content is on the recorded calls.

- 4 -

forearm and her knee. (*Id.*) Dr. Cammarata testified that Victim's wounds were fresh and could not have been caused two days prior. (*Id.* at 16). Dr. Cammarata confirmed that Victim's injuries could not have resulted from a fall down the stairs while carrying groceries. (*Id.* at 24). Regarding the scrapes on Victim's arms, Dr. Cammarata opined that those specific injuries were also inconsistent with a fall. (*Id.* at 26-27).

Dr. Justin Torok testified that he is a diagnostic radiologist who reviewed Victim's scans. (*Id.* at 37, 47). Dr. Torok testified about Victim's injuries.

The Commonwealth next called Mikayla Shaffer, a forensic DNA specialist. (*Id.* at 67). Ms. Shaffer identified item "K1" as the DNA profile obtained from Victim. (*Id.* at 93). Item "Q1" was the blood sample taken from Appellant's jeans. (*Id.*) Ms. Shaffer confirmed that the blood sample taken from Appellant's jeans matched Victim's DNA. (*Id.*) Ms. Shaffer further testified that it was near certain that the blood on Appellant's jeans matched Victim's DNA,[4] and there was no possibility that the blood came from Appellant. (*Id.*)

The Commonwealth also presented testimony from Detective Roger Patrick Young, a blood spatter expert. (*Id.* at 110). The detective reviewed

---

[4] Specifically, Ms. Shaffer testified that the probability of randomly selecting an unrelated individual in the population with this DNA profile would be 1 in 340 nonillion from the Caucasian population; 1 in 9.2 decillion from the African-American population; and 1 in 3.5 decillion from the Hispanic population. (*Id.* at 94).

the blood spatters from the crime scene and testified that the blood spatters were consistent with "bloodletting," and that such occurrences are inconsistent with gunshots or high energy weapons. (*Id.* at 138). Detective Young opined that the bloodletting suggested that Victim's injuries were caused by a fist or by kicking, or some other low-velocity instrument. (*Id.* at 144). Furthermore, Detective Young testified the blood spatters were inconsistent with a falling event. (*Id.*)

On March 12, 2022, at the conclusion of trial, the jury convicted Appellant of burglary, aggravated assault, simple assault, REAP, and possession of drug paraphernalia.[5] After the jury rendered its verdict, the court convicted Appellant of summary harassment, and acquitted him of the restrictions on alcoholic beverages offense. On April 13, 2022, the court sentenced Appellant to an aggregate term of 6 to 12 years' imprisonment. Appellant timely filed a post-sentence motion on April 22, 2022. On July 14, 2022, the court granted sentencing relief and resentenced Appellant to an aggregate term of 5 to 10 years' imprisonment. The court denied Appellant's motion in all other respects. Appellant timely filed a notice of appeal on August 12, 2022. The court did not order Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant filed none.

---

[5] The court granted Appellant's motion for judgment of acquittal on the loitering and prowling charge. (*See* N.T. Trial, 3/12/22, at 20).

Appellant raises the following issue for our review:

> Whether Appellant's convictions as to counts 1 through 6 of the Information[6] should be reversed and vacated with prejudice given the Commonwealth's failure to present sufficient evidence establishing, beyond a reasonable doubt, that Appellant was in fact the perpetrator of the offenses charged?

(Appellant's Brief at 4).

Appellant argues the Commonwealth presented insufficient evidence to prove he was the person who assaulted Victim. Appellant claims that Victim did not identify Appellant as her attacker.[7] Appellant asserts that witness testimony demonstrated it was possible that Victim's injuries were inflicted by a fist. Appellant insists that the force required to inflict the damages caused to Victim by a fist would result in bruising and cuts to the perpetrator's hand. Appellant emphasizes that the Commonwealth did not present evidence that Appellant's hands were bruised or cut when police apprehended him.

Appellant further contends that the blood found at the crime scene does not prove Appellant was the assailant. Appellant highlights that the Commonwealth did not analyze the wipes found near Appellant upon his apprehension to show that Appellant cleaned himself after the assault, and

---

[6] Counts 1 through 6 of the Information are listed as follows: burglary, aggravated assault, simple assault, REAP, loitering and prowling at night, and possession of drug paraphernalia. As the court acquitted Appellant on the charge of loitering and prowling at night, we presume Appellant did not mean to challenge this count on appeal.

[7] We reiterate that Victim had passed away by the time of trial.

- 7 -

police found no evidence of blood in Appellant's car or on his person.  Appellant submits that the evidence in this case was equally consistent with the possibility that an unknown individual broke into Victim's home and attacked her.  Appellant concludes the Commonwealth presented insufficient evidence to sustain his convictions, and this Court must reverse his convictions and vacate the judgment of sentence.[8]  We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence.  Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt.  Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty.  Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.
>
> The Commonwealth may sustain its burden by means of wholly circumstantial evidence.  Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where

---

[8] Appellant makes no specific argument relative to his possession of drug paraphernalia conviction, which arose due to the officers' recovery of drug paraphernalia in Appellant's clothing at the time of his arrest.  In other words, this conviction was not tied to the actual assault on Victim, but evidence that police recovered when Appellant was arrested.  Thus, we consider waived any challenge to the possession of drug paraphernalia conviction as completely undeveloped on appeal.  *See* Pa.R.A.P. 2119(a) (discussing required content of argument section on appeal).

the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

**Commonwealth v. Sebolka**, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting **Commonwealth v. Franklin**, 69 A.3d 719, 722-23 (Pa.Super. 2013)).[9]

Instantly, the Commonwealth presented, *inter alia*, the following evidence to prove Appellant was the assailant: (1) police apprehended Appellant approximately 30 to 60 minutes after the assault at a residence about ten minutes away from Victim's residence; (2) police discovered cleaning wipes and a pile of clothing next to Appellant, who was sleeping naked when police apprehended him; (3) police observed blood stains on the jeans next to Appellant, which appeared fresh; (4) the officers found Appellant's wallet, a large amount of cash, a social security card, and a pipe for smoking methamphetamine in the pockets of Appellant's bloodied jeans; (5) Appellant's car was parked nearby the residence where he was apprehended and the car was warm to the touch, suggesting it had been

---

[9] Because Appellant does not directly attack the particular elements of the crimes of which he was convicted and bases his argument solely on his claim that he was not the assailant, we will not reproduce the statutes for each crime at issue.

driven recently; (6) the Commonwealth's forensic DNA specialist, Mikayla Shaffer, testified that it was near certain that the blood on Appellant's jeans was from Victim; (7) Dr. Cammarata testified that the abrasions on Victim's arms were fresh and inconsistent with the falling event as theorized by defense counsel; and (8) the front door to Victim's residence had damage suggesting a forced entry. The Commonwealth also provided evidence through the jailhouse recordings that Appellant knew Victim had money hidden in her house, which could have supplied a motive for the assault.

Additionally, contrary to Appellant's contention, none of the Commonwealth's witnesses testified that Victim's injuries were definitively caused by a fist, to support Appellant's reasoning that he would have had bruising or cuts to his hands if he were the perpetrator. Rather, the Commonwealth presented witnesses who testified that the injuries could have been caused by a fist or a low-velocity instrument. Further, the jury heard Appellant's theory of the case regarding Victim's alleged fall and how Appellant acquired Victim's blood on his jeans, and it was within the jury's purview to reject that theory in favor of the Commonwealth's evidence of guilt. **See Sebolka, supra**. Viewed in the light most favorable to the Commonwealth as verdict-winner, the evidence was sufficient to prove that Appellant was the assailant necessary to sustain his convictions for burglary, aggravated assault, simple assault, and REAP. **See id.** Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date:   7/12/2023