J-S14008-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| v. | : | |
| EVAN BROWN | : | |
| Appellant | : | No. 1189 MDA 2023 |

Appeal from the Judgment of Sentence Entered June 21, 2023
In the Court of Common Pleas of Dauphin County Criminal Division at
No(s):  CP-22-CR-0000356-2022

BEFORE:  LAZARUS, P.J., PANELLA, P.J.E., and MURRAY, J.

MEMORANDUM BY LAZARUS, P.J.:          **FILED: MAY 15, 2024**

Evan Brown appeals from the judgment of sentence, entered in the Court of Common Pleas of Dauphin County, following his convictions of two counts of endangering welfare of children (EWOC),[1] and one count each of driving under the influence – general impairment (DUI)[2] and recklessly endangering another person (REAP).[3]  After review, we affirm on the well-written opinion authored by the Honorable William T. Tully.

We adopt the trial court's full factual summary set forth in its opinion, *see* Trial Court Opinion, 11/21/23, at 2-7, but, nevertheless, provide a truncated version here.  On January 5, 2022, Brown was in a heated argument

---

[1] 18 Pa.C.S.A. § 4304(a)(1).

[2] 75 Pa.C.S.A. § 3802(a)(1).

[3] 18 Pa.C.S.A. § 2705.

with Rebecca Grady, his girlfriend. Brown was intoxicated at the time and wanted to drive their children[4] to "Nan's" house. *See id.* Grady repeatedly asked Brown to let her drive because Brown was intoxicated. However, Brown refused, put the children in the vehicle, and demanded that Grady get in as well.

Throughout the drive, Brown continued to argue with Grady, who, in turn, continued to warn him that his behavior was dangerous and that he was too drunk to drive, and begged him to pull over. During the drive, Brown also sideswiped trash cans, struck a utility pole, and punched Grady. Grady repeatedly warned Brown that he was endangering their children, but Brown refused to acquiesce and continued driving intoxicated and arguing with Grady.[5] Brown told Grady to lie about who had been driving. *See id.* at 6.

_____

[4] Brown and Grady had a then-two-year-old daughter and a then-three-month-old son. *See id.* at 5.

[5] Police were notified that Grady had texted a friend and that the text had prompted the friend to call the police. *See id.* at 2-3. As a result, Lower Swatara Township Police Officer Jordan Thomas responded and, ultimately, was provided with Grady's phone number. *See id.* Officer Thomas called Grady and spoke with her regarding Brown's behavior. *See id.* Grady informed Officer Thomas that she and Brown were at 905 Cumbler Street. *See id.*

At roughly the same time, Dauphin County Dispatch received a call reporting an intoxicated or suspicious person involved in a domestic violence incident outside of 905 Cumbler Street. *See id.* at 3.

Police responded to 905 Cumbler Street, where they encountered Brown, who was visibly intoxicated and belligerent. *See id.* at 2-4.

Brown's arrival at "Nan's" house was captured on video surveillance by the Dauphin County Housing Authority. *See id.* at 4. The video depicted Brown pull into the parking lot, exit the driver's seat, and retrieve a child out of the back seat. *See id.* at 5. The video also depicted Grady exiting the passenger seat and retrieving a child out of the back seat. *See id.*

Ultimately, police responded and arrested Brown. Brown was charged, *inter alia*, with the above-mentioned offenses.[6] On March 13-14, 2023, Brown, acting *pro se*,[7] proceeded to a jury trial, after which he was convicted of the above-mentioned offenses. The trial court deferred sentencing and ordered the preparation of a pre-sentence investigation report.

Following trial, Brown relinquished his *pro se* status and Attorney Bradley filed a motion for acquittal, which the trial court denied on April 27, 2023. Subsequently, on June 21, 2023, the trial court sentenced Brown to an aggregate sentence of 18 to 36 months' imprisonment. On June 28, 2023, Brown filed a timely counseled post-sentence motion, which the trial court denied. Brown filed a timely notice of appeal and a court-ordered Pa.R.A.P. 1925(b) concise statement of errors complained of on appeal. Brown now raises the following claims for our review:

> [1.] Was there insufficient evidence to establish that [] Brown acted recklessly when[,] under controlling law[,] there must be

---

[6] Brown was also charged with institutional vandalism – educational facility, *see* 18 Pa.C.S.A. § 3307(a)(3), but this charge was withdrawn prior to trial.

[7] Prior to trial, the trial court appointed Spencer Bradley, Esquire, as Brown's standby counsel. *See* Opinion and Order, 7/22/22, at 1.

evidence of unsafe driving separate from the underlying [DUI] conduct?

[2.] Was there insufficient evidence to establish that [] Brown knowingly placed his children in harm's way when[,] under controlling law[,] there must be evidence of unsafe driving separate from the underlying [DUI] conduct?

Brief for Appellant, at 5.

Both of Brown's claims challenge the sufficiency of the evidence, for which we adhere to the following standard of review:

The standard we apply in reviewing the sufficiency of the evidence is whether[,] viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying [the above] test, we may not [re-]weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that[,] as a matter of law[,] no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated[,] and all evidence actually received must be considered. Finally, the [trier] of fact[,] while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Smith*, 97 A.3d 782, 790 (Pa. Super. 2014) (citation omitted).

The REAP statute provides that "[a] person commits a misdemeanor of the second degree if he recklessly engages in conduct which places or may

place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

The EWOC statute provides that "[a] parent . . . supervising the welfare of a child under 18 years of age . . . commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." *Id.* at § 4304(a)(1).

Importantly, we are mindful that "the commission of DUI with children in a vehicle — by itself — is inadequate to sustain convictions under either our EWOC or REAP statutes." *Commonwealth v. Delamarter*, 302 A.3d 1195, 1205 (Pa. Super. 2023).

However, as the trial court aptly describes throughout its opinion, this case is not merely a DUI with children in the car. Rather, throughout the course of his DUI incident, Brown was consistently notified by Grady that his behavior was reckless and dangerous but, despite these warnings, Brown continued to argue with Grady, punched her, and continued to drive. Additionally, Brown struck several trash cans throughout the drive, as well as a utility pole, and instructed Grady to lie about who was driving the vehicle.

Mindful of the record, the applicable standard of review, the relevant caselaw, and the parties' briefs, we affirm on the basis of the trial court's thorough and well-reasoned opinion. *See* Trial Court Opinion, 11/21/23, at 1-13. Consequently, we afford Brown no relief on either of his claims. The parties are directed to attach a copy of the trial court's opinion in the event of further proceedings.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 5/15/2024

COMMONWEALTH OF PENNSYLVANIA      : IN THE COURT OF COMMON PLEAS
                                            : DAUPHIN COUNTY, PENNSYLVANIA
                                            :
              v.                            :
                                            : DOCKET NO. 356 CR 2022
EVAN BROWN                              : SUPERIOR COURT
                                            : DOCKET NO. 1189 MDA 2023
                                            :

## TRIAL COURT OPINION

Evan Brown, ("Defendant") appeals the judgment of sentence imposed on June 21, 2023. For the reasons set forth, the judgment should be affirmed.

## RELEVANT PROCEDURAL HISTORY

On January 24, 2022, the Commonwealth charged Defendant with: 2 counts of Endangering Welfare of Children – Parent/Guardian/Other Commits Offense [1]; Institutional Vandalism Educational Facility [2]; DUI: General Impairment/Incapable of Safe Driving- Second Offense [3]; Recklessly Endangering Another Person [4].

On March 13, 2023, Defendant proceeded to trial *pro se*, with standby counsel. At the conclusion of trial on March 14, 2023, a jury found Defendant guilty on all counts. Defendant, by counsel, filed a Motion for Judgment of Acquittal which the Court denied by Order filed April 27, 2023. On June 21, 2023, the Court sentenced Defendant at counts 1 and 2 to 18-36 months (concurrent with each other); 12-24 months at count 4 (concurrent with count 1), and 6-24 months at count 5 (concurrent with count 1).

---

[1] 18 Pa.C.S.A. § 4304 §§ A1
[2] 18 Pa.C.S.A. § 3307 §§ A3 (withdrawn)
[3] 75 Pa.C.S.A § 3802 §§ A1
[4] 18 Pa. C.S.A.§ 2705

58-13

On June 28, 2023, Defendant filed a Post-Sentence Motion for Judgment of Acquittal, Arrest of Judgment, a Motion to Vacate and a Motion for Alteration of Sentence, to which the Commonwealth filed Answers on June 30, 2023. Defendant filed a Supplemental Post Sentence Motion on June 30, 2023. We denied Defendant's Post-Sentence Motion and Supplemental Post-Sentence Motion by Order filed August 1, 2023.

On August 18, 2023, Defendant filed a Notice of Appeal. Pursuant to our Order to do so, Defendant filed a Concise Statement of Matters Complained of on Appeal on September 25, 2023.

## FACTS

The facts, viewed in a light most favorable to the Commonwealth as the verdict winner, are as follows:

On January 5, 2022, at approximately 5:49 p.m., Lower Swatara Township Police Officer Jordan Thomas received a 9-1-1 dispatch to 147 B Lane and responded to that address. (Transcript of Proceedings, "N.T.", p. 51). The caller was not at that address. *Id.* Although the lights were on, no one answered the door. (N.T. p. 52). Officer Thomas contacted the original caller to gather more information. *Id.* That caller stated that Rebecca Grady texted her. *Id.* Officer Thomas located a known number for Rebecca Grady and reached her by phone. *Id.* Officer Thomas described Ms. Grady's demeanor upon answering the phone as frantic, emotionally heightened, upset, and almost terrified. *Id.* The officer's mobile video recording system recorded and saved the call upon the officer's activation of lights and siren. (N.T. p. 53).

Video footage captured by the mobile video recording system depicted Officer Thomas, accompanied by another officer, in front of their police vehicle at 147 B Lane. (N.T. p. 54). The

2

Commonwealth played the audio portion of the recording of the 9-1-1 call for the jury and entered the transcript of the call into evidence. (N.T. p. 55; Exhibits 8 and 8A pp. 53-56). After speaking with Ms. Grady, Officer Thomas called Dauphin County Dispatch to determine whether they received a call which referenced the address Ms. Grady provided, 905 Cumbler Street. (N.T. p. 58). Dauphin County Dispatch advised that they did receive a call which reported an intoxicated or suspicious person outside 905 Cumbler Street. *Id.* Suspecting a domestic violence incident, Officer Thomas advised Steelton Police Officers on the scene to detain Defendant. *Id.*

When Officer Thomas arrived, Defendant was shouting obscenities at the officers and demanding to know why he was being arrested. (N.T. p. 59). Police placed Defendant in the back of Officer Thomas' vehicle as the officer spoke with Ms. Grady. *Id.* Officer Thomas obtained Ms. Grady's written statement. (N.T. pp. 60-61). Police took photos of Ms. Grady's Chrysler Sebring parked in front of 905 Cumbler Street. (N.T. pp. 61-62). The photographs depict front end damage, an exposed portion of the radiator, a dislodged passenger side mirror hanging by a wire, a slightly lifted hood, and scratches and marks which appeared to be paint transfer. (N.T. pp. 61-64; Exhibits 1-3).

Officer Thomas attempted to speak to Defendant. (N.T. p. 64). Defendant repeatedly questioned why he was under arrest and cursed the officer. *Id.* Officer Thomas attempted to explain to Defendant why he was under arrest, but Defendant persisted in his demands and continuously interrupted. (*Id.*; p. 67). Defendant's speech was slurred and incoherent. *Id.* Officer Thomas noted that Defendant smelled strongly of alcohol. (N.T. pp. 64-65). Defendant kicked the door of the police vehicle. (N.T. p. 68). Officer Thomas described Defendant's behavior throughout the interaction as very combative and indicative of impairment. (N.T. p. 68; p. 71).

3

The Commonwealth entered footage of the rear facing camera of the mobile video recording system into evidence. (N.T. p. 66; Exhibit 9).

Defendant remained combative en route to, and during, the booking. (*Id.*; p. 75). At the booking center, Defendant became agitated in Officer Thomas' presence, making it impossible for Officer Thomas to read the implied DL-26 warnings to Defendant.[5] (N.T. p. 69). Another officer read the warnings. *Id.* Defendant made racial slurs toward Officer Thomas and stated that he was going to "get [him] in some way shape or form". (N.T. p. 71; p. 72). Defendant insisted that he was in the passenger's seat, not the driver's seat although Ms. Grady told Officer Thomas that Defendant drove to 905 Cumbler Street then switched to the passenger seat when they arrived. (N.T. p. 72).

The Commonwealth called Derry Township Police Department Officer Todd Hauser, who was working at the booking center that evening, as a witness. (N.T. p. 83). Officer Thomas had asked Officer Hauser to read the DL-26 form regarding the rights and penalties for refusal to consent to a blood draw. (N.T. p. 84). Officer Thomas testified that a refusal to consent to the blood draw results in the presumption of the highest level of driving under the influence and automatic license suspension. *Id.* Officer Hauser read the form to Defendant verbatim. (*Id.*; p. 85). Defendant refused to submit to the blood draw and did not sign the form. (N.T. pp. 85-86).

The Commonwealth also called Daniel Phillips, Facility Maintenance Manager for the Dauphin County Housing Authority, as a witness. On January 5, 2022, Mr. Phillips was working at an administrative building across the parking lot from 905 Cumbler Street. Mr. Phillips

---

[5] 75 Pa.C.S.A. § 1547-Chemical Testing to Determine Amount of Alcohol or Controlled Substance, commonly referred to as the Implied Consent Law.

4

advised the responding police officers that Housing Authority security cameras would have captured surveillance footage. (N.T. pp. 91-92; Commonwealth Exhibit 7). Police obtained surveillance which depicted Defendant pull into the parking lot and exit the vehicle on the driver's side. *Id.* The video depicted a female exit the vehicle from the passenger side and remove a child from the back seat. (N.T. p. 93). The Defendant then removed a child in a child carrier and took that child into the house. *Id.*

Jeff Enders, Director of the Dauphin County Department of Public Safety testified that the Department received a 9-1-1 call on January 5, 2022, related 905 Cumbler Street. (N.T. p. 95). The Commonwealth admitted into evidence the transcript of the call. (N.T. p. 96; Commonwealth Exhibit 17-A).

Rebecca Grady testified that Defendant is her boyfriend and that they have a great relationship when he is not in jail. (N.T. p. 98). Ms. Grady stated that she hopes to maintain her relationship with Defendant and have more children with him. *Id.* She and Defendant have two children together, a daughter, then two years old, and a son, then three or four months. (N.T. p. 98). On January 5, 2022, Ms. Grady and Defendant lived at 147 B Lane in Harrisburg. (N.T. p. 99).

Ms. Grady denied that she and Defendant argued that evening, but rather, characterized the interaction as a "misunderstanding". (N.T. p. 100). The Commonwealth entered Ms. Grady's written statement into evidence. (N.T. p. 101; Exhibit 5). Ms. Grady stated that the misunderstanding arose because she believed Defendant was intoxicated. (N.T. p. 102; N.T. pp. 107-108). After he arrived at 147 B Lane, Defendant drove Ms. Grady and their two children to 905 Cumbler Street. (*Id.*; pp. 107-108). Ms. Grady testified that her friend called the police but she denied that she requested anyone call 9-1-1. *Id.* Ms. Grady acknowledged speaking with

5

police over the phone and in person. (N.T. pp. 102-103). When directed to do so by the Commonwealth attorney, Ms. Grady read her written statement into evidence as follows:

> Ms. Grady: It says, you are not supposed to be drinking, you said. You will lie and say I'm not. Here I say no, even he don't care about me or our kids so why would I do anything to this point that I said. And I'm taking the kids to Nan's house. And he persisted to come even though I said, no you're intoxicated. He said shut up and loaded the kids in the car. As I got things packed, I walked out to the car, and he was in the driver's seat of the car. And I told him to get out, that he's not driving. He said yes and gave me the kids. And I say, no, our kids are in the car. He said, you know I can drive, don't play with me. I said, Evan, you know [,] your kids. He said, shut up and get in the car and don't do this, meaning have someone call the cops or fighting. Me with him. He then dragged me out of the passenger side by my jacket and said get in the car, so I did. On the way to Nan's house I told him to pull over.

(N.T. pp. 109-110).

Upon questioning by the Commonwealth's attorney, Ms. Grady acknowledged that her reading of the written statement omitted certain portions. (N.T. p. 110). Until confronted by the Commonwealth's attorney, Ms. Grady denied that Defendant hit anything while driving. (N.T. p. 111). When instructed not to omit any portions, Ms. Grady read her written statement as follows:

> Ms. Grady: And he would not. On the way here. And then he decided to on the way here and he sideswiped some trash cans and caused some damage on the right side of the car. I yelled at him to stop the car and pull over and I'm driving. He then punched me on the side of my arm with no injury or harm caused, told me to shut up, bitch. If you weren't so annoying this wouldn't happen. I said I wasn't saying anything. Again, you're probably

6

drunk and shouldn't be driving. Then again made a statement, what will it take for you to stop and have your kids or love yourself or why? After all I did for you, you keep outing us through this. And then we went into the parking lot at Nan's.

(N.T. p. 111; Exhibit 5).

The Commonwealth called Lower Swatara Township Police Officer Dan Tingle as a witness. Officer Tingle responded to the 9-1-1 call at 147 B Lane on January 5, 2022. (N.T. p. 95; Exhibit 17A; N.T. p. 136). Office Tingle assisted Officer Thomas with placing Defendant in the back of Officer Thomas' patrol vehicle during the investigation at the scene. (N.T. p. 137). Officer Tingle testified as to photographs he took of Ms. Grady's vehicle. (N.T. p. 137). Officer Tingle testified that Ms. Grady stated that only the damage to the front of the vehicle as depicted in the first photograph pre-dated January 5, 2022. *Id.* The second photograph depicts a mirror hanging down and abrasions. (N.T. p. 139). As to that damage, Ms. Grady stated to Officer Tingle that while Defendant drove from 147 B Lane to Cumbler Street, Defendant struck several trash cans and a utility pole. *Id.*

## DISCUSSION

A. The Commonwealth presented sufficient evidence upon which the jury could find Defendant guilty of the crime of Endangering the Welfare of Children.

Regarding a challenge to the of sufficiency of evidence our Superior Court has reminded,

> Our review of a sufficiency claim is well settled:
> [W]e evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact

7

finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. ... Importantly, the jury, which passes upon the weight and credibility of each witness's testimony, is free to believe all, part, or none of the evidence.
*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019) (citations & quotation marks omitted).

*Commonwealth v. Delamarter*, A.3d 1195, 1201 (Pa. Super. 2023).

A person is guilty of the crime of Endangering the Welfare of Children ("EWOC") where:

(1) A parent, guardian or other person supervising the welfare of a child under 18 years of age, or a person that employs or supervises such a person, commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support.

(18 Pa.C.S.A. § 4304).

In *Commonwealh v. Delamarter*, 302 A.3d 1195, 1201 (Pa. Super. 2023) the Superior Court

explained,

Section 4304 of the Crimes Code provides, in relevant part: "A parent ... supervising the welfare of a child under 18 years of age, ... commits an offense if he knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). The Court has developed a three-part test for an EWOC conviction. The Commonwealth must prove:

[(]1) [T]he accused [was] aware of his/her duty to protect the child;

[(]2) [T]he accused [was] aware that the child [was] in circumstances that could threaten the child's physical or psychological welfare; and

[(]3) [T]he accused has either failed to act or has taken action so lame or meager that such actions cannot reasonably be expected to protect the child's welfare.
*Bryant*, 57 A.3d at 197 (citations omitted). We further note:

Endangering the welfare of a child is a specific intent offense enacted in broad terms so as to safeguard the welfare and security of children. To be convicted under this statute, the Commonwealth must prove a *knowing violation of a duty of care.*

8

*Commonwealth v. Foster*, 764 A.2d 1076, 1082 (Pa. Super. 2000) (citations omitted and emphasis added).

A knowing *mens rea* is defined in the Crimes Code as follows:

(b) Kinds of culpability defined.--

...

(2) A person acts knowingly with respect to a material element of an offense when:

> (i)    if the element involves the nature of his conduct or the attendant circumstances, he is aware that his conduct is of that nature or that such circumstances exist; and

> (ii) ·    if the element involves a result of his conduct, he is aware that it is practically certain that his conduct will cause such a result.
> 18 Pa.C.S. § 302(b)(2)(i)-(ii).

*Commonwealth v. Delamarter*, 302 A.3d 1195, 1201–02 (Pa. Super. 2023)

In *Delamarter,* just as in the instant case, the defendant challenged the sufficiency of evidence of the *mens rea* element of the conviction of EWOC,. There, the defendant told the officer responding to the accident that he was reading a text and bumped into the guardrail on the passenger side of his car. The officer observed Defendant's child standing on the floor of the back seat of the car, uninjured. The defendant exhibited slow movements, sluggish, thick, and slurred speech, and constricted pupils. *Id.* at 1198. The officer arrested the defendant for suspicion of DUI and the defendant refused to submit to a blood test. The defendant asserted that the Commonwealth failed to prove that he knowingly violated a duty of care to his child because the fact that he drove under the influence of a controlled substance is, alone, insufficient to demonstrate specific intent.

In affirming the defendant's conviction, The Superior Court in *Delamarter* looked to the Pennsylvania Supreme Court's sufficiency review in *Commonwealth v. Howard*, 257 A.3d 1217 (PA 2021). There, the Supreme Court clarified that the Commonwealth must prove that the

9

defendant was aware of both their duty of care to their child when transporting the child and that their conduct endangered the welfare of their child. *Delamarter*, at 1205, citing *Howard*, 257 A.3d 1225. The *Delamarter* Court explained:

> With respect to the latter component of the *mens rea* element, the defendant must be aware that they have placed the child in a perilous or dangerous situation, but they do not have to be aware of the certainty of a particular result such as a car accident:

> [A] person violates Section 4304(a)(1) if he "knowingly endangers the welfare of the child by violating a duty of care, protection or support." 18 Pa.C.S. § 4304(a)(1). "Endanger" is defined, *inter alia*, as "to bring into danger or peril," or "to create a dangerous situation." https://www.merriam-webster.com/dictionary/endanger. Thus, the material element of Section 4304(a)(1) is the creation of a perilous or dangerous situation... We emphasize that, for purposes of Section 4304, the requirement of Section 302(b)(2)(i) that the accused be "aware that it is practically certain that his conduct will cause such a result" does not require that he be certain of a particular harm or injury – for example, in this case, a car accident. Again, as it pertains to Section 4304, the *result* of the actor's conduct is the creation of a dangerous *situation*, which is what Section 4304(a)(1) seeks to prevent.

> *Id.* (emphasis in original). Moreover, "in determining what conduct violates the [EWOC] statute, '[t]he common sense of the community, as well as the sense of decency, propriety and the morality which most people entertain is sufficient to apply the statute to each particular case, and to individuate what particular conduct is rendered criminal by it.' " *Id.* at 1222 n.9, *quoting Commonwealth v. Lynn*, 631 Pa. 541, 114 A.3d 796, 818 (2015).

*Commonwealth v. Delamarter*, 302 A.3d 1195, 1205–06 (Pa. Super. 2023). *See also*, *Commonwealth v. Krock*, 282 A.3d 1132,1137-39 (Pa. Super. 2022)("When an adult is driving a vehicle in which a child is a passenger, common sense dictates that the driver is supervising that child and, thus, has a duty of care towards those young passengers. This is especially so because the driver controls the speed and direction of the vehicle and regulates the degree of safety in which it is operated.")

Applying these standards to the instant case, the Commonwealth sufficiently proved that Defendant knowingly brought the welfare of his two young children into danger and knowingly created a dangerous situation by driving under the influence. The jury was free to accept as fact the testimony of the responding officers, the 9-1-1 transcript, the complete written statement of Ms. Grady, video footage of Defendant's combative behavior, and photographs of the damaged vehicle. Ms. Grady's written statement that she shouted at Defendant that he should not be driving because he was intoxicated, and to think of their children, well satisfied the *mens re* element of the crime. Defendant exhibited awareness of his conduct in that he told Ms. Grady to "shut up and get in the car and don't do this, meaning have someone call the cops or fighting". Defendant certainly knew that he hit trash cans along the way while his children were in the back seat.

Viewing the evidence in a light most favorable to the Commonwealth as the verdict winner, the evidence sufficiently satisfied the elements of EWOC.

B. The Commonwealth presented sufficient evidence upon which the jury could find Defendant guilty of the crime of Recklessly Endangering Another Person.

Defendant next argues that the Commonwealth failed to present evidence sufficient to establish the elements for Recklessly Endangering Another Person ("REAP"). [6] REAP occurs when a person "recklessly engages in conduct which places or may place another person in danger of death or serious bodily injury." 18 Pa.C.S.A. § 2705.

---

[6] We need not restate the standard of review applicable to a challenge to the sufficiency of evidence.

11

In *Commonwealth v. Mastromatteo* 719 A. 2d 1081 (Pa.Super. 1998), the Superior Court

explained: "[D]riving under the influence of intoxicating substances does not create legal

recklessness per se but must be accompanied with other tangible indicia of unsafe driving to a

degree that creates a substantial risk of injury which is consciously disregarded." *Mastromatteo*,

719 A.2d at 1083, *citing Com. v. Sullivan*, 2004 PA Super 481, ¶ 12, 864 A.2d 1246, 1250

(2004). Further,

> [T]he *mens rea* necessary to support the offense of reckless driving is a requirement that [Defendant] drove in such a manner that there existed a substantial risk that injury would result from his driving, *i.e.*, a high probability that a motor vehicle accident would result from driving in that manner, that he was aware of that risk and yet continued to drive in such a manner, in essence, callously disregarding the risk he was creating by his own reckless driving.

*Commonwealth v. Greenberg*, 885 A.2d 1025, 1027–28 (Pa.Super. 2005) (quoting *Bullick*, 830
A.2d at 1003) (emphasis added).


Here, the Commonwealth presented evidence of tangible indicia of Defendant's reckless and

unsafe driving to a degree which endangered another person. [7] Over the pleas of Ms. Grady to

pull over, Defendant drove in a manner that caused him to crash into objects off the roadway,

damaging the vehicle. Within moments of Defendant's exiting the vehicle, police observed his

combative and irrational behavior. Such facts allowed the jury to infer that Defendant drove

---

[7] We recognize that "the EWOC and REAP are not aligned from an elements standpoint. ...A conviction for reckless endangerment requires proof of conduct that places or may place another person in danger of death or serious bodily injury, while a conviction for endangering the welfare of children only requires proof of circumstances that could threaten the child's physical or psychological welfare. Thus, reckless endangerment requires proof of a fact that endangering the welfare of children does not. In other words, the element of conduct which places or may place a person in danger of death or serious bodily injury is not subsumed within proof that a child is placed in circumstances that could threaten the child."

*Commonwealth v. Martir*, 712 A.2d 327, 329-30 (Pa. Super. 1998).
*Commonwealth v. Delamarter*, 2023 PA Super 161, 302 A.3d 1195, 1205 (2023)

recklessly and consciously disregarded that substantial risk that injury to his family would result from his driving. *See, Greenberg*, 885 A.2d at 1027.

CONCLUSION

For these reasons, the judgment of sentence should be affirmed.

BY THE COURT:

WILLIAM T. TULLY
JUDGE

November ___2 1___, 2023

Distribution: 11/21/2023 @ 10:43 am

The Superior Court mail

Chambers of The Honorable William T. Tully DG

Spencer H.C. Bradley, Esq., Dauphin County Public Defender's Office I 0

Dauphin County District Attorney's Office 10

13