J-A22043-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA    :    IN THE SUPERIOR COURT OF
                                :         PENNSYLVANIA
                                :
           v.                   :
                                :
                                :
GEORGE EDWARD BLY               :
                                :
           Appellant            :    No. 131 WDA 2024

Appeal from the Judgment of Sentence Entered September 7, 2023
In the Court of Common Pleas of Mercer County Criminal Division at
No(s):  CP-43-CR-0000040-2022

BEFORE:  MURRAY, J., McLAUGHLIN, J., and KING, J.

MEMORANDUM BY KING, J.:                    **FILED: December 4, 2024**

Appellant, George Edward Bly, appeals from the judgment of sentence entered in the Mercer County Court of Common Pleas, following his jury trial convictions for drug delivery resulting in death ("DDRD"), recklessly endangering another person, and two counts each of criminal use of a communication facility and possession with intent to distribute.[1]  We affirm.

The relevant facts and procedural history of this case are as follows.  On March 11, 2022, the Commonwealth filed a criminal information charging Appellant with the aforementioned offenses in connection with the death of Brandon Bickerson ("Victim").  For the DDRD charge, the information detailed that Appellant sold heroin and/or fentanyl to Victim, which ultimately resulted in his death.

---

[1] 18 Pa.C.S.A. §§ 2506(a), 2705, 7512(a), and 35 P.S. § 780-113(a)(30), respectively.

A jury trial commenced on May 10, 2023. The Commonwealth presented evidence that Victim's grandmother found Victim dead on the bathroom floor of her residence on the morning of September 27, 2021. In a trashcan near Appellant's body, officers recovered a red glassine bag with heroin and fentanyl residue. Officers further recovered a hypodermic needle, a foil bag with a folded-up paper packet containing heroin and fentanyl, and a clear plastic bag containing methamphetamine. The Commonwealth presented messages between Appellant and Victim and cell phone location data to establish that Victim spoke with and met with Appellant to purchase heroin/fentanyl on September 22, 2021 and September 26, 2021.

Trooper Joseph Snyder testified that he interviewed Appellant after Victim's death. During this interview, Appellant told Trooper Snyder that he met with Victim on the days prior to Victim's death. When asked whether Appellant sold any controlled substances to Victim during these meetings, Appellant admitted that he sold methamphetamine and heroin to Victim on two occasions. Appellant further stated that he used folded pieces of paper inside colored bags as packaging for the controlled substances that he sold. Trooper Snyder also testified that he searched the contents of Victim's phone and did not find any evidence that Victim purchased drugs from any other individual.

Robert Snyder, the chief deputy coroner, testified that he determined that combined drug toxicity was the cause of Victim's death. He explained his conclusion as follows:

> [T]he level of fentanyl in [Victim]'s blood that came back was at 16 nanograms per milliliter. Fatal overdoses occur between 3 and 28, so 16. The average, actually, is 8.3 nanograms per milliliter. So that puts [Victim]'s blood level like almost twice as high as what the average is on the fentanyl level in the blood, so I based it on that. But also I believe the methamphetamine played a part in it, as well. That was a high level, if I recall, 1,600 or 1,800 nanograms per milliliter; and basically anything over 600 can result in some cardiac issues, respiratory issues, and what have you.

(N.T. Trial, 5/10/23, at 90).

Michael Lamb, an expert in forensic toxicology, testified that the levels of methamphetamine and fentanyl found in Victim's system could each be considered in the range of a lethal outcome, depending on an individual's tolerance to the drug. Mr. Lamb further explained that the level of a drug and the level of the metabolite of that drug present in a person's system allows him to draw an approximate conclusion about how recently an individual used the drug. Based on the level of fentanyl and the absence of nor-fentanyl, a metabolite of fentanyl, Mr. Lamb concluded that Victim died shortly after using fentanyl. Based on the level of methamphetamine and the level of amphetamine, the metabolite, present in Victim's system, Mr. Lamb could not draw a conclusion as to whether Victim's methamphetamine use was close to his death.

Dr. Eric Vey, an expert in forensic pathology, testified as follows regarding the level of substances found in Victim's system:

> Then we've got the methamphetamine at 1,800, with the amphetamine at 100, so we're way above the lethal threshold for that at 1,000. The lethal threshold is 1,000

> roughly. And the fentanyl, the lethal threshold starts at three, average lethal level at autopsy is eight. We're at 16, so we're at double there.
>
> So we got two things going on here at the same time that potentially caused the fatal outcome for [Victim], the methamphetamine and the fentanyl. Here's the rub on this case. In the absence of fentanyl, death from methamphetamine alone cannot be excluded. In the absence of methamphetamine, death from fentanyl cannot be excluded. So both of these things by themselves could have killed him. Now we've got them both together, we're going to have a fatal outcome.

(N.T. Trial, 5/11/23, at 51-52). When asked about the recency of the consumption of the methamphetamine, Dr. Vey opined that "the intake of the methamphetamine occurred in relative close proximity to [Victim's] death." (*Id.* at 53). When asked about the recency of the consumption of fentanyl, Dr Vey opined:

> The fentanyl, once he hits this blood level of 16, he's going to be dead. Again, this is going to be a close proximity to his death. Because once his fentanyl level hits 16, that's the ball game.

(*Id.* at 54).

On May 11, 2023, the jury found Appellant guilty of all charges. The court sentenced Appellant to 10½ to 22 years' incarceration on September 7, 2023. On October 10, 2023, Appellant filed a timely post-sentence motion,[2]

---

[2] On September 8, 2023, the trial court entered an order granting Appellant an extension of time until 20 days after the jury trial transcripts were filed to file a post-sentence motion. The transcripts were filed on September 13, 2023. Accordingly, Appellant had until October 3, 2023, to file a post-
*(Footnote Continued Next Page)*

which the court denied on January 8, 2024. On January 25, 2024, Appellant filed a timely notice of appeal. On January 31, 2024, the court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b), and Appellant timely complied on February 16, 2024.

Appellant raises the following issue for our review:

> Did the trial court err[] in finding that the evidence presented at trial was sufficient to establish Appellant's guilt beyond a reasonable doubt as to the verdict of [DDRD]?

(Appellant's Brief at 7).

Appellant argues that the Commonwealth, in its criminal information, only specified that Appellant sold heroin and fentanyl to Victim in its description of the DDRD charge. Appellant contends that the Commonwealth did not seek to amend the information to include methamphetamine in the description and as such, Appellant was not charged with the sale of methamphetamine resulting in Victim's death. Appellant notes that Mr. Snyder, Mr. Lamb and Dr. Vey testified that the level of methamphetamine in Victim's system was sufficient to cause his death. Appellant claims that Dr.

---

sentence motion. On October 10, 2023, Appellant filed a post-sentence motion and a second application for an extension of time to file a post-sentence motion. The trial court scheduled a hearing on the post-sentence motion but did not grant the extension of time to file a post-sentence motion. On May 24, 2024, Appellant filed a motion to correct the record. On the same day, the court granted the motion and ordered that the record be corrected to reflect that prior to October 3, 2023, Appellant requested and was granted an extension of time to file a post-sentence motion until October 10, 2023.

Vey refused to conclude that combined drug toxicity caused Victim's death but specified that the methamphetamine by itself or the fentanyl by itself could have caused Victim's death. Appellant argues that the Commonwealth failed to establish that Victim would not have died "but for" Appellant's delivery of fentanyl because the methamphetamine alone could have killed Victim. Appellant concludes that the evidence was insufficient to sustain the conviction for DDRD on these grounds, and this Court must vacate his judgment of sentence. We disagree.

In reviewing a challenge to the sufficiency of the evidence, our standard of review is as follows:

> As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

> The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's

crimes beyond a reasonable doubt, the Appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa.Super. 2019) (quoting *Commonwealth v. Franklin*, 69 A.3d 719, 722-23 (Pa.Super. 2013)).

The Crimes Code defines the offense of DDRD as follows:

**§ 2506.  Drug delivery resulting in death**

**(a) Offense defined.**—A person commits a felony of the first degree if the person intentionally administers, dispenses, delivers, gives, prescribes, sells or distributes any controlled substance or counterfeit controlled substance in violation of … The Controlled Substance, Drug, Device and Cosmetic Act, and another person dies as a result of using the substance.

18 Pa.C.S.A. § 2506(a).  Thus, to prove DDRD, the Commonwealth must establish:  1) the defendant administered, dispensed, delivered, gave, prescribed, sold, or distributed a controlled substance or a counterfeit controlled substance to a person; 2) the defendant did so intentionally; 3) the administration, dispense, delivery, prescription, sale, or distribution was in violation of the Controlled Substance, Drug, Device and Cosmetic Drug Act; and 4) a person died as a result of using the substance.  *Commonwealth v. Peck*, 663 Pa. 484, 495, 242 A.3d 1274, 1280 (2020).

To establish that a person died as a result of using the substance, "[t]he statute requires 'but-for' causation such that the defendant's action with the drugs was a direct and substantial factor in producing the death[.]" *Commonwealth v. Scott*, ____ A.3d.____, 2024 WL 4353600 at *4 (Pa.Super.

filed Oct. 1, 2024) (some internal quotation marks omitted). "[T]he results of the defendant's actions cannot be so extraordinarily remote or attenuated that it would be unfair to hold the defendant criminally responsible." ***Commonwealth. v. Kakhankham***, 132 A.3d 986, 993 (Pa.Super. 2015), *appeal denied*, 635 Pa. 773, 138 A.3d 4 (2016). Nevertheless, "a defendant's conduct need not be the only cause of the victim's death in order to establish a causal connection[. C]riminal responsibility may be properly assessed against an individual whose conduct was a direct and substantial factor in producing the death even though other factors combined with that conduct to achieve the result." ***Commonwealth v. Proctor***, 156 A.3d 261, 271 (Pa.Super. 2017) (internal citation and quotation marks omitted) (holding evidence was sufficient to sustain appellant's DDRD conviction where victim's cause of death was combined drug toxicity as opposed to being caused solely by drug provided by appellant).

Instantly, during the charging conference, the court discussed the issue that Appellant now raises on appeal. The court stated: "[I]n reviewing Dr. Vey's testimony, the information shows that the specific charge was delivering heroin and fentanyl. The testimony just was that methamphetamine by itself could have killed him. Is the allegation that the methamphetamine came from [Appellant]?" (N.T. Trial, 9/11/23, at 61). In response to the court's inquiry, the Commonwealth asserted that Trooper Snyder testified that Appellant admitted to selling methamphetamine to Victim on two occasions in the days

preceding Victim's death. The court then noted that the Commonwealth could orally amend the criminal information and let the matter proceed as a jury question as to which drugs, if any, Appellant sold to Victim.

Although the Commonwealth did not expressly move to amend the criminal information thereafter, the court essentially granted this request by asking the jury to decide whether Appellant sold methamphetamine to Victim resulting in Victim's death. Thus, the record demonstrates that the court permitted the information to be orally amended to include the sale of methamphetamine as part of the DDRD charge.

At the end of this conversation, Appellant stated "I object, yes" in response to the court's prompting to "object just for your appeal." (**Id.** at 62). Nevertheless, Appellant did not specify any basis for his objection nor did he assert that Appellant would suffer any prejudice as a result of the court's decision to permit the inclusion of methamphetamine to the DDRD charge. **See Commonwealth v. Jackson**, 215 A.3d 972, 977 (Pa.Super. 2019) (holding appellant waived argument that trial court erred in permitting criminal information to be amended when appellant offered only general objection before trial court and did not articulate argument raised on appeal). Additionally, Appellant offers no argument on appeal concerning how the court erred in this decision. **See** Pa.R.A.P. 2119(a) (detailing requirements of argument section in appellate brief); **Commonwealth v. Hakala**, 900 A.2d 404 (Pa.Super. 2006), *appeal denied*, 589 Pa. 737, 909 A.2d 1288 (2006)

(stating failure to develop argument on appeal results in waiver). Thus, Appellant has waived any issue regarding the court's decision to let the jury consider evidence of the sale of methamphetamine as it relates to the DDRD charge.

Against this backdrop, there is no merit to Appellant's argument that the evidence was insufficient to sustain the DDRD conviction, because Dr. Vey testified that the methamphetamine alone could have killed Victim. The Commonwealth presented evidence to demonstrate that Appellant sold heroin/fentanyl and methamphetamine to Victim prior to Victim's death. Therefore, regardless of whether Victim's death was caused by methamphetamine alone, fentanyl alone, or a combination of both drugs, there was sufficient evidence for the jury to conclude that Appellant's sale of drugs to Victim resulted in Victim's death. *See Scott, supra*; *Proctor, supra*. As such, the evidence was sufficient to support the DDRD conviction. *See Sebolka, supra*.

Moreover, even if the DDRD charge was limited to the sale of heroin/fentanyl, there was sufficient evidence for the jury to conclude that Appellant's sale of heroin/fentanyl to Victim was a direct and substantial factor in producing Victim's death. *See Scott, supra*. Mr. Snyder testified that the cause of death was combined drug toxicity from the fentanyl and the methamphetamine. Mr. Snyder and Dr. Vey testified that the level of fentanyl in Appellant's system was not only over the lethal threshold level but nearly

double the average level of fentanyl found in a body after death. Although Dr. Vey testified that he could not exclude the possibility that Appellant could have died from the methamphetamine alone, he further stated that once the level of fentanyl rose to the level found in Appellant's body, Appellant would die. Additionally, both Mr. Lamb and Dr. Vey testified that Appellant used the fentanyl in close proximity to his death. Viewed in the light most favorable to the Commonwealth as the verdict winner, the evidence was sufficient for the jury to conclude that the fentanyl was a "but-for" cause of Victim's death. ***See Sebolka, supra***. ***See also Scott, supra***; ***Proctor, supra***. Accordingly, we affirm.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: 12/04/2024